UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-20242-CR-ALTONAGA/TORRES

UNITED STATES OF AMERICA

v.

MARK SCOTT GRENON,
JONATHAN DAVID GRENON,
JORDAN PAUL GRENON, and
JOSEPH TIMOTHY GRENON,

    **Defendants.**
_____/

## GOVERNMENT'S MOTION TO CONTINUE TRIAL

Defendant Mark Grenon and his three sons, defendants Jonathan, Jordan, and Joseph Grenon, are charged with leading a decade-long conspiracy in which they sold toxic bleach as a "miracle" cure for a litany of serious diseases and disorders, including cancer, Alzheimer's, autism, Parkinson's, multiple sclerosis, HIV/AIDS, and, most recently, COVID-19. All four defendants are also charged with criminal contempt, because when a U.S. District Judge for the Southern District of Florida ordered the Grenons to cease distributing their toxic bleach, the Grenons openly and vehemently defied the judge's orders, while threatening the judge with violence.

Trial is currently set to commence on September 27, 2021. However, Mark and Joseph Grenon are presently in Colombia, undergoing extradition proceedings initiated by the United States to secure their return to the Southern District of Florida for prosecution. Because they are contesting their extraditions, it is doubtful they will be present in this District and ready for trial on September 27. Therefore, and for the reasons provided below, the government hereby requests that the Court continue the trial in this matter until on or about March 28, 2022, to allow Mark and Joseph Grenon to be extradited and all four charged conspirators to be tried together.

# BACKGROUND[1]

### A.     The Fraudulent Scheme

From 2010 through 2020, the defendants manufactured, promoted, sold, and distributed Miracle Mineral Solution ("MMS"), a chemical solution containing sodium chlorite and water. When ingested orally as directed by the defendants, MMS became chlorine dioxide, a powerful bleaching agent typically used for industrial water treatment or bleaching textiles, pulp, and paper.

The defendants claimed that MMS was a miracle cure-all that could treat, prevent, and cure a variety of serious diseases and disorders. However, MMS was not approved by the U.S. Food and Drug Administration ("FDA") for any use whatsoever. Rather, the FDA had previously issued public warnings strongly urging consumers not to purchase or use MMS, advising that ingesting MMS was the same as drinking bleach and had caused serious and potentially life-threatening side effects, including severe vomiting, diarrhea, and life-threatening low blood pressure. FDA received numerous reports of adverse reactions to MMS, including hospitalizations, life-threatening conditions, and death. According to the American Association of Poison Control Centers, since 2014, poison control centers have managed thousands of cases involving chlorine dioxide poisoning, many of which involved children who suffered serious side effects, such as a six-year-old autistic girl who was hospitalized with liver failure in 2017.

Over the past decade, the defendants sold tens of thousands of bottles of MMS nationwide, including to consumers in the Southern District of Florida. The defendants promoted and distributed MMS through a complex network of websites that they created and maintained. These websites featured countless newsletters, posts, and articles authored by the defendants, and dozens

---

[1]     The United States provides this thorough Background section, despite the relatively straightforward relief requested herein, in order to familiarize the Court with the facts of this recently filed case, and to underscore the need for a joint trial.

of podcasts and video interviews featuring the defendants, in which they touted the miraculous healing powers of MMS.

The defendants were well aware that their marketing activities with respect to MMS were unlawful. So, they decided to sell MMS under the guise of the Genesis II Church of Health and Healing ("Genesis"), an avowedly non-religious entity that Mark Grenon created in an attempt to avoid government regulation of MMS. The defendants repeatedly admitted that they operated the Genesis "church" for the express purpose of cloaking their unlawful conduct with respect to MMS as constitutionally protected religious exercise, in an attempt to avoid government scrutiny of their actions and shield themselves from liability. However, Genesis' own websites, which were created and are maintained by the defendants, described Genesis as a "non-religious church." And Mark Grenon has admitted, in recorded statements, that Genesis "has nothing to do with religion," and that he founded Genesis to "legalize the use of MMS" and avoid "going [ ] to jail."

### B. The Defendants' Contemptuous Violation of Court Orders

In response to the foregoing conduct, on April 16, 2020, the United States filed a civil complaint against the above-captioned defendants and Genesis in the U.S. District Court for the Southern District of Florida, seeking an injunction to prohibit the defendants from further violating the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA"), by distributing MMS. *See United States v. Genesis II Church of Health and Healing, et al.*, Case No. 20-21601-CV-WILLIAMS (hereinafter, the "Civil Docket"), ECF No. 1. U.S. District Judge Kathleen M. Williams subsequently issued a Temporary Restraining Order on April 17, 2020 (the "TRO"), and an Order of Preliminary Injunction on May 1, 2020 (the "PI"), both of which prohibited the defendants from "directly or indirectly, label[ing], hold[ing], and/or distribut[ing] any

[misbranded] drug, including but not limited to MMS." *Id.*, ECF No. 4 (TRO) at 3; ECF No. 26 (PI) at 8.

The defendants violated those court orders by continuing to label and distribute MMS. For example, on June 13, 2020, Jordan Grenon published a newsletter directing consumers to a video featuring Jonathan Grenon, in which Jonathan explained that, despite the TRO and the PI, the defendants had decided to continue distributing MMS. A few weeks later, on July 4, 2020, Jonathan posted a new video in which he stated that the defendants had distributed "over a hundred" bottles of MMS to consumers over the prior two to three weeks.

While the defendants' continued distribution of MMS plainly violated the TRO and the PI, the defendants' public statements removed any doubt as to whether those violations were willful. For example, on April 21, 2020, in a letter addressed to Judge Williams and attorneys for the United States, co-signed by all of the defendants, the defendants claimed that they were "NOT bound to obey" the TRO. Civil Docket, ECF No. 11. In another letter addressed to Judge Williams and attorneys for the United States dated that same day, Mark Grenon, on behalf of all the defendants, wrote: "We are practicing 'civil disobedience' against this unjust order! … Civil disobedience is permitted in the US Constitution[,] peaceably of course at first[,] if possible . . . . NOTE: The 2nd Amendment is there in case it can't be done peaceably . . . . The Genesis II Church of Health and Healing will not stop . . . providing [MMS] to the world!" *Id.*, ECF No. 11. Similarly, in several of the weekly Genesis podcasts co-hosted by Mark and Joseph Grenon, they acknowledged: "We're violating a temporary restraining order. Well, we don't care . . . . . We're going to do it whether you like it or not." They further threatened to "pick up guns" and instigate "a Waco" should the government interfere with the defendants' marketing of MMS, while remarking of Judge Williams, "You think we're afraid of some Obama-appointed judge that broke

4

their oath? … You're no judge . . . . This judge could go to jail . . . . You could be taken out Ms. Williams . . . . [W]e're not obeying it. Don't care what you do."

### C. Procedural History

On June 29, 2020, the United States filed a Criminal Complaint charging the defendants with conspiracy to defraud the United States and to commit an offense against the United States, in violation of 18 U.S.C. § 371, and criminal contempt, in violation of 18 U.S.C. § 401(3). (ECF No. 3.)

On July 8, 2020, Jonathan and Jordan Grenon were arrested on those charges in Bradenton, Florida, and made their initial appearances in the Middle District of Florida that same day. Those defendants waived their right to counsel and elected to represent themselves. A detention hearing was held, at which a U.S. Magistrate Judge ordered those defendants detained pending trial after finding, "by a preponderance of the evidence, that no condition or combination of conditions of release will reasonably assure either of these defendants' presence as required, and, by clear and convincing evidence, that no condition or combination of conditions of release will reasonably assure the safety of the community." *United States v. Grenon*, Case No. 20-mj-1657 (M.D. Fla.), ECF No. 13 (Detention Order) at 2.

On August 10, 2020, Mark and Joseph Grenon were arrested in Colombia by Colombian law enforcement officers based on provisional arrest requests issued by the United States. Shortly thereafter, the United States submitted formal extradition requests to Colombia to secure the extraditions of Mark and Joseph Grenon to the United States for prosecution. Mark and Joseph Grenon are presently contesting their extraditions, despite the fact that they are both United States citizens.

5

On April 22, 2021, a federal grand jury sitting in the Southern District of Florida returned an Indictment charging Mark, Jonathan, Jordan, and Joseph Grenon with conspiracy to defraud the United States and to commit offenses against the United States, in violation of 18 U.S.C. § 371, and criminal contempt, in violation of 18 U.S.C. § 401(3). (ECF No. 16.) According to the United States' estimates of the Sentencing Guidelines, if the defendants are convicted of these offenses, they will likely face Guidelines ranges of approximately 168-210 months imprisonment.

On June 7, 2021, the Court issued an Order Setting Trial Date as to Mark, Jonathan, Jordan, and Joseph Grenon, which set trial in this matter for the two-week period commencing September 27, 2021. (ECF No. 40.) However, given that Mark and Joseph Grenon are still in Colombia undergoing extradition proceedings, it is doubtful that they will be extradited in time to proceed to trial on September 27, 2021.

### D. The Defendants' Position Regarding This Motion

The United States was not able to ascertain whether defendants Jonathan and Jordan Grenon consent or object to the relief sought herein because the defendants are proceeding *pro se*. The undersigned Assistant United States Attorneys attempted to obtain the defendants' positions through the defendants' appointed stand-by counsel, but such attempts were fruitless. However, numerous statements made by Jonathan and Jordan Grenon since they were arrested suggest they do not desire to proceed to trial until Mark Grenon, their father and the undisputed leader of the charged conspiracy, is present to proceed to trial with them.[2]

---

[2]  Given the foregoing, the United States respectfully suggests that the Court set a status conference or motion hearing to ascertain whether Jonathan and Jordan Grenon consent or object to the requested trial continuance, or, alternatively, that the Court wait until the deadline for a response passes and, if the defendants have not filed a response, then the Court grant the instant motion as unopposed and on the merits.

## **LEGAL STANDARD**

"District courts have 'unquestionable' authority to control their own dockets." *Smith v. Psychiatric Solutions, Inc.*, 750 F.3d 1253, 1262 (11th Cir. 2014) (internal citation omitted). "This authority includes 'broad discretion in deciding how best to manage the cases before them.'" *Id.* (internal citation omitted). Accordingly, "[t]he granting of a continuance is left to the sound discretion of the trial judge," *United States v. Warren*, 772 F.2d 827, 837 (11th Cir. 1985), and the Eleventh Circuit has "clearly stated that [it] will not reverse a district court's ruling on a motion for continuance unless the ruling is arbitrary, unreasonable, and severely prejudicial," *Sec. & Exch. Comm'n v. Levin*, 849 F.3d 995, 1005 (11th Cir. 2017) (internal citation omitted).

## **ARGUMENT**

The Court should continue trial in this matter for a period of approximately six months, until on or about March 28, 2022, to allow Mark and Joseph Grenon to be extradited to the United States and all four defendants to be tried together. The Speedy Trial Act expressly contemplates and permits such a continuance to allow for the apprehension of fugitive co-defendants and, thereby, a joint trial. Moreover, the ends of justice served by such a continuance would outweigh any countervailing interest of the public and the defendants in a speedier trial.

    **A.    The Court Should Continue Trial For Six Months So That All Four Defendants Can Be Tried Together.**

"Joint trials play a vital role in the criminal justice system and serve important interests: they reduce the risk of inconsistent verdicts and the unfairness inherent in serial trials, lighten the burden on victims and witnesses, increase efficiency, and conserve scarce judicial resources." *United States v. Lopez*, 649 F.3d 1222, 1233 (11th Cir. 2011) (citations omitted); *see also Richardson v. Marsh*, 481 U.S. 200, 210 (1987) ("It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings,

7

presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand."). "In this circuit, the rule about joint trials is that 'defendants who are indicted together are usually tried together.'" *Lopez*, 649 F.3d at 1234 (quoting *United States v. Browne*, 505 F.3d 1229, 1268 (11th Cir. 2007)). This "rule is even more pronounced in conspiracy cases where the refrain is that 'defendants charged with a common conspiracy should be tried together.'" *Id.* (internal citation omitted); *see also Delva v. United States*, No. 20-10542, 2021 WL 1149682, at *3 (11th Cir. Mar. 25, 2021) (recognizing "the general presumption that defendants indicted together will be tried together, particularly in conspiracy cases").

All of these important interests—reducing the risk of inconsistent verdicts, lightening the burden on victims and witnesses, increasing efficiency, and conserving scarce judicial resources—would be served in this case by continuing the trial until such time that all the charged conspirators can be tried together. The United States will present evidence at trial of a conspiracy that spanned over 10 years, victimized thousands of people, and violated a multitude of intertwined FDCA statutory provisions and regulations. The defendants, in both their pre-arrest public statements and in post-arrest court proceedings, have made clear their intention to claim that their conduct constituted protected religious exercise, an argument which will implicate novel and complex legal issues. It is therefore unlikely that trial in this case will take less than two weeks—especially if the defendants continue to insist upon proceeding *pro se*, as the difficulties in trying this complex case will be exacerbated by the defendants' decisions to forgo legal counsel and instead represent themselves.

Subjecting the victims, the witnesses, the Court, the United States, and the community to duplicative, burdensome trials in this case, on the same evidence and against defendants charged in the same conspiracy, would run directly counter to all of the significant interests identified above. To avoid such a result, the Court should grant the requested continuance so that all the defendants can be tried together.

### B. A Continuance in This Case Is Expressly Contemplated and Permitted by the Speedy Trial Act.

To be clear, the requested continuance would not violate the Speedy Trial Act. The Speedy Trial Act generally requires that "the trial of a defendant charged in an . . . indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1).

As an initial mater, under this Court's Administrative Orders relating to the Coronavirus pandemic, the Speedy Trial clock has not yet begun to run for any of the defendants in this case, and will not begin to run until, at the earliest, July 19, 2021. *See In Re: Coronovirus Public Emergency*, Administrative Order 2021-50. Future Administrative Orders excluding time beyond July 19, 2021, because of the Coronavirus pandemic, may further render any Speedy Trial concerns unfounded.

Regardless, the Speedy Trial Act excludes from the seventy day period within which trial generally must begin certain periods of delay. In pertinent part, the Speedy Trial Act automatically excludes "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(6). Read in conjunction with subsection (h)(3)(A), which excludes "[a]ny period of

delay resulting from the absence or unavailability of the defendant"—with "absence or unavailability of the defendant" defined to include defendants "attempting to avoid apprehension or prosecution," 18 U.S.C. § 3161(h)(3)(B)—subsection (h)(6) embodies the principle that "delay caused by an unapprehended codefendant stops the clock for the defendant before the court." *United States v. Tobin*, 840 F.2d 867, 869 (11th Cir. 1988). In other words, "if the speedy trial clock for a co-defendant is not running because the co-defendant is at large and therefore 'absent' within the meaning of § 3161(h)(3), the speedy trial clock for the defendant himself, under § 3161(h)(6), generally stops running as well." *United States v. Woodley*, 484 F. App'x 310, 315 (11th Cir. 2012) (citing *Tobin*, 840 F.2d at 869).

These provisions of the Speedy Trial Act reinforce the need for a continuance in this case, as the statute explicitly contemplates, and permits, continuances necessary to accomplish joint trials. The Eleventh Circuit has often observed that subsection (h)(6) evidences "the strong judicial and legislative policy favoring joint trials." *Woodley*, 484 F. App'x at 315 (citations omitted). Specifically, "the legislative history of the [Speedy Trial] Act indicates that the purpose of the [(h)(6)] exclusion was to avoid requiring the government to seek severance in multi-defendant trials." *United States v. Davenport*, 935 F.2d 1223, 1236 (11th Cir. 1991). As the Eleventh Circuit noted in *United States v. Varella*, "Congress recognized the utility of multi-defendant trials to effectuate the prompt efficient disposition of criminal justice. It felt that the efficiency and economy of joint trials far outweighed the desirability of granting a severance where the criterion was simply the passage of time." 692 F.2d 1352, 1359 (11th Cir. 1982), *cert. denied*, 463 U.S. 1210 (1983). Accordingly, the Eleventh Circuit has repeatedly affirmed the granting of continuances, and corresponding exclusions of time under the Speedy Trial Act, where, as here, a codefendant had yet to be apprehended. *See, e.g.*, *United States v. Murray*, 154 F. App'x 740, 746

10

(11th Cir. 2005) (affirming district court's grant of a continuance of over two years because the co-defendant "fought extradition to the United States, and had not yet appeared before a judge," and thus "the Speedy Trial time limit never began to run" with respect to the defendant before the court); *Davenport*, 935 F.2d at 1229-30 (explaining that because the defendant was charged along with "unapprehended" and thus "unavailable codefendants," and because "no motion to sever had been granted, the delay occasioned by those codefendants . . . is charged to [the defendant] under [subsection (h)(6)]").

There is one possible, and in any event, easily avoidable, wrinkle. While the panels in *Tobin* and *Davenport* affirmed exclusions of speedy trial time under § 3161(h)(6) owing to the unavailability of unapprehended co-defendants, both panels also held that subsequent transfers of the missing co-defendants to fugitive status "effectively severed them from the case," and therefore "[f]rom that date forward, delay attributable to their fugitive status [was] no longer charged" to the apprehended defendants under subsection (h)(6). *Davenport*, 935 F.2d at 1230 (citing *Tobin*, 840 F.2d at 869); *see generally* 18 U.S.C. § 3161(h)(6) (excluding "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run *and no motion for severance has been granted"*) (emphasis added). Later decisions by the Eleventh Circuit raise questions as to whether these portions of these decisions are good law, as the judicial and largely administrative act of transferring a co-defendant to fugitive status—unlike the affirmative action by an apprehended defendant to move for a severance—would seem insufficient to overcome "the strong judicial and legislative policy favoring joint trials" which animates 18 U.S.C. § 3161(h)(6). *Woodley*, 484 F. App'x at 315; *see also id.* at 317 ("When no motion to sever has been granted, let alone made, any delay occasioned by the unavailable co-defendant under § 3161(h)(3)(A) is properly charged to the defendant under § 3161(h)(6).")

11

On May 24, 2021, approximately one month after this Indictment was returned, the Court, via a paperless Notice, transferred Mark and Joseph Grenon to fugitive status. (ECF No. 38.) To the extent *Tobin* and *Davenport* remain good law, delay attributable to defendants Mark and Joseph Grenon may not appropriately be charged to defendants Jonathan and Jordan Grenon under subsection (h)(6) once the Speedy Trial clock resumes. To avoid any possible question on that front, the Court should simply remove Mark and Joseph Grenon from fugitive status.

Although Mark and Joseph Grenon are in some sense "fugitives" in that they have not yet appeared in this case, it is not as though the United States is unaware of their whereabouts. Rather, they are being detained in a Colombian prison after the United States submitted to Colombia provisional requests for their arrests. Nor is the United States idly waiting for these defendants to self-surrender. Rather, the United States has diligently pursued their extradition to this District, an effort the government will persist in until Colombia surrenders them to the United States for prosecution. Furthermore, given the nature of the charges, as well as the United States citizenship of Mark and Joseph Grenon, the United States has no reason to believe that Colombia will not grant their extraditions. And since almost a year has elapsed since the United States initiated these extradition proceedings, it is highly likely that Mark and Joseph Grenon will be extradited within a matter of months.

Therefore, and to further "the strong judicial and legislative policy favoring joint trials" which animates 18 U.S.C. § 3161(h)(6), *Woodley*, 484 F. App'x at 315, the United States respectfully requests that the Court remove defendants Mark and Joseph Grenon from fugitive status so that, pursuant to § 3161(h)(6), the speedy trial clock unequivocally will not start running with respect to defendants Jonathan and Jordan Grenon until Mark and Joseph Grenon appear in this District.

### C. The Ends of Justice Served by Granting a Continuance Outweigh the Best Interest of the Public and the Defendants in a Speedy Trial.

In addition to the automatic exclusion owing to a missing co-defendant, as provided by 18 U.S.C. § 3161(h)(6), the Speedy Trial Act also excludes "[a]ny period of delay resulting from a continuance granted by any judge . . . at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). Although Speed Trial time with respect to defendants Jonathan and Jordan Grenon should be automatically excluded under § 3161(h)(6) due to defendants Mark and Joseph Grenon not yet appearing, the United States additionally requests that the Court grant the requested continuance pursuant to 18 U.S.C. § 3161(h)(7), on the basis of findings that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant[s] in a speedy trial." *Id.*

In short, a continuance in this case is necessary to achieve a joint trial because Mark and Joseph Grenon are contesting their extraditions from Colombia and there is little likelihood that they will be returned to the United States and ready for trial by September 27, 2021. As detailed in the preceding sections, and as recognized by Congress and the Eleventh Circuit, a joint trial is necessary in this case to ensure the efficiency and fairness of the criminal justice system. That is especially so since some or all of these defendants will proceed to trial *pro se*. Therefore, and for all of the reasons outlined above, the ends of justice served by a continuance to accomplish a joint trial would outweigh the best interest of the public and the defendants in a speedier trial.

### CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court continue trial in this matter until on or about March 28, 2022, to allow defendants Mark and Joseph Grenon

to be extradited and all four of the defendants to be tried together. The United States further requests that the Court grant this continuance pursuant to 18 U.S.C. § 3161(h)(7), on the basis of an ends-of-justice finding, and that the Court transfer defendants Mark and Joseph Grenon out of fugitive status so that the speedy trial clock unequivocally stops running with respect to defendants Jonathan and Jordan Grenon.

Because Jonathan and Jordan Grenon are proceeding *pro se*, the United States does not know and cannot state their position on this motion. Accordingly, the United States respectfully suggests that the Court set a status conference or motion hearing to inquire as to whether these defendants consent or object to the requested trial continuance, or, alternatively, that the Court wait until the deadline for a response passes and, if the defendants have not filed a response, then the Court grant the instant motion as unopposed and on the merits.

        Respectfully submitted,

        JUAN ANTONIO GONZALEZ
        ACTING UNITED STATES ATTORNEY

BY:   */s/ Michael B. Homer*
       MICHAEL B. HOMER
       Assistant United States Attorney
       Court ID No. A5502497
       99 Northeast 4th Street
       Miami, Florida 33132-2111
       Telephone: 305-961-9289
       Michael.Homer@usdoj.gov

       JOHN C. SHIPLEY
       Senior Counsel
       Assistant United States Attorney
       FL Bar No. 0069670
       99 Northeast 4th Street
       Miami, Florida 33132-2111
       Telephone: 305-961-9111
       John.Shipley@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 6, 2021, I caused a true and correct copy of the foregoing to be delivered via Certified Mail to *pro se* Defendants Jonathan David Grenon and Jordan Paul Grenon, at the Miami Federal Detention Center, Inmate Mail/Parcels, Post Office Box 019120, Miami, Florida 33101.

                                                          */s/ Michael B. Homer*
                                                        MICHAEL B. HOMER
                                                        Assistant United States Attorney