

FILED BY ___MC___ D.C.

SEP 16 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

Plaintiff,                                    CASE NO.: 21-20242-CR-ALTONAGA

v.

JOSEPH TIMOTHY GRENON

Defendant

### DEFENDANTS REPLY TO THE GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO PROVIDE A SPEEDY TRIAL AND PROSECUTORIAL MISCONDUCT

DEFENDANT, JOSEPH TIMOTHY GRENON respectfully moves the Court to dismiss the above-entitled cause on the grounds that this case has been pending for years and I have not received a speedy trial.

### POINT ONE

### THE DEFENDANT'S RIGHT TO A SPEEDY TRIAL WERE VIOLATED AND THE FINDINGS BY THE COURT IN THE INTERESTS OF JUSTICE WERE AN ABUSE OF PROCESS AND CONTRARY TO THE CONSTITUTIONAL RIGHTS OF A DEFENDANT HELD WITHOUT BAIL FOR TWO YEARS.

1. The Prosecution claims that the Court sua sponte ordered the evaluation of the Defendant.

2. The Court and the Prosecution both work for the Federal Government, are agents of the Federal Government, and both entities are obligated to provide the Defendant with a fair trial, a speedy trial if there was cause for an evaluation other than for the nefarious purpose of delaying the trial, then the Court should not have made the sua sponte request so late in the judicial process. The order was not justified by any articulable cause; and the Defendant had not even appeared before the court in more than 730 days, and therefore there was no just cause for the making of such an order. As the Court said in *Card v. Miami-Dade County Florida*, 147 F. Supp. 2d 1334 - Dist. Court, SD Florida



2001 "the Eleventh Judicial Circuit, rather than the County, that bears responsibility for ensuring that such evaluations are timely performed. The County's position finds some support in "*Brooks v. George County,* 84 F.3d 157, 168-69 (5th Cir.1996)". Here, the evaluation is clearly NOT timely and the Defendant has been in custody for years, well beyond the proper timeline for making such a request, especially with no new information that would require such an order. The only event which occurred is the court's recognition of the extreme passage of time without a jury trial.

3. The Defendant requested counsel, and it has not been appointed and accepted as effective counsel yet. The Prosecution, in an amazing display of abuse, seeks in a footnote an order from the court prohibiting the appointed counsel from raising similar motions, even though more passage of time would entitle the Defendant to bring another speedy trial motion. This is especially true considering the material fact that the Prosecution in one breath argues that the speedy trial clock has not even begun, then in the second breath, asks the court to prohibit retained or appointed counsel from filing or arguing a speedy trial motion which may need to be filed by counsel in another year or two from now if this motion is denied and the case still has not been brought to trial??? This is more than outrageous, it is evidence of a plan, scheme, and artifice by the Prosecution to deprive the Defendant of a fair and speedy trial; it is evidence of a plan, scheme, and artifice by the Prosecution to deprive the Defendant of speedy and public trial; deprive defendant of due process;

4. Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or



2

served with a summons in connection with such charges;18 U.S. Code 3161 - time Limits and exclusions; 18 U.S. Code 3162 – Sanctions.( Indictment April 22, 2021)

5. There exists another issue, and that is the Mental Health Administrator's failure to have a policy, procedure or system in place to make sure inmates do not fall through the cracks is deliberately indifferent as to its known or obvious consequences. That the Defendant has been incarcerated for such a long time without this evaluation, and suddenly and without explanation, justification or excuse, sent by the Court for psychiatric evaluation???? Why wasn't this brought to the attention of the court when the Defendant was first incarcerated or arrested if there was a need for an evaluation. Why more than a year later?

6. There is no evidence that a competency hearing was held. "The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the Government from prosecuting defendants who are incompetent. See U.S. Const. Amend. V; *Drope v. Missouri*, 420 U.S. 162, 171 (1975) ("It has long been accepted that a person whose mental condition is such that he lacks capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."). The Eleventh Circuit has stated that "[f]or a defendant to be competent to stand trial, he must have `sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . and have a rational as well as factual understanding of the proceedings against him.'" *United States v. Rahim*, 431 F.3d 753, 759 (11th Cir. 2005) (quoting *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995)). Pursuant to 18 U.S.C. § 4241(d),[1]. The Court in ordering the referral took



none of these factors into account, did not consider them when he was first arrested, and did not explain why the sudden urge overtook the court to make this order Sua Sponte.

7. If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General.

8. The preponderance of the evidence standard requires the factfinder to find "that the existence of [the] fact is more probable than its nonexistence." *In re Winship*, 397 U.S. 358, 371 (1970).

9. **According to the Eleventh Circuit, a court is required to hold a competency hearing whenever there is a "bona fide doubt" as to the defendant's competence.** *Rahim*, 431 F.3d at 759. In making a competency determination, the Court may consider a number of factors, including the defendant's behavior in the courtroom, evidence of irrational behavior, and any prior medical opinions as to competence. *Drope*, 420 U.S. at 180. Similarly, the Eleventh Circuit has permitted the Court to consider a defendant's behavior and statements in open court, letters drafted by the defendant, and previous psychological evaluations. See *Rahim*, 431 F.3d at 759.

10. There is no evidence the Defendant displayed any evidence that he was not competent to stand trial and the sua sponte decision by the Court for an evaluation at this late date surely does not toll the speedy trial clock.

11. Because there was no rhyme or reason for the entry of the order, the only factor the Defendant can believe is that the prosecution encouraged the court to make the order, or



the Court saw the calendar and did this sua sponte for the nefarious purpose of depriving the Plaintiff with a speedy trial. Either scenario results in the same conclusion, the Defendant is entitled to a dismissal of this action and to be released forthwith.

12. The claim is that the speedy trial clock never began due to the corona virus is also a red herring, sham and a ludicrous argument considering the simple fact that zoom hearings and criminal cases were instituted almost immediately after the lockdowns. There was no interests in justice where the jury, witnesses, and court could all appear by zoom. The defendants could have been released on bail. The Defendants could have received home confinement. The Defendants could have had the trial in person behind screens or with masks. The interests of justice were not served by the 2 year incarceration of the Defendant without just cause.

13. Defendant made his first appearance in AUGUST 20, 2020, and it is NOW SEPTEMBER OF 2022. He has been incarcerated, without bail, without a hearing, without appearing by zoom, without a trial. The years of incarceration dimming his memory for preparation of his defense. He never stipulated to any delays due to covid[covid has never been isolated in a lab] or any other reason.
The Defendant admits that on August 4, 2022, the Defendant made his initial appearance. That means that from August 20, 2020 to August 4, 2022, when the court saw the Defendant in person, the court did not order an evaluation, did not question the Defendant about the soundness of his mind, and did not obtain any sort of consent from the Defendant for a delay after incarcerating him for more than two years without bail, without bond, and without offering him home confinement.



5

joseph ti[illegible]

14. The Prosecutor, after all the time I have been incarcerated, just moved for a psychiatric evaluation without good cause and without proper notice, and certainly for the purpose of extending my incarceration and with the specific purpose of depriving me of my rights to a speedy trial.

## POINT TWO

## THE PROSECUTION DID NOT ADDRESS THE SIMPLE FACT THAT THEY CONCEALED EVIDENCE IN THEIR POSSESSION, DID NOT SURRENDER IT ACCORDING TO THE ORDERS OF THIS COURT, AND THE CASE SHOULD BE DISMISSED FOR PROSECUTORIAL MISCONDUCT.

15. As alleged in my motion and not contradicted by the Prosecution, the Prosecution has concealed material evidence in the case which could be exculpatory and vital to my defense.

16. Because the Prosecution failed to address the grounds, failed to deny concealing the evidence, the Court must presume the motion is true and has merit.

17. While the Defendant was incarcerated, his case became a matter of public interest and concern to individuals who believe that the arrest was wrongful, and in their efforts to aid in his defense, sent exculpatory information and studies to the Prosecution, with the understanding that the information would be shared with the Defendant who was incarcerated and clearly sheltered from the world. This belief of these organizations that the prosecution would share the exculpatory information was also done in reliance on the order of this Court compelling the prosecution to share all potentially exculpatory information.



6

18. The Prosecution, however, was in possession of this evidence related to the charges and the case name and number, and did NOT share the information it received. That as a result of their failure to share the information and their failure to defend against these serious charges made in the Defendants motion dictate the need for an immediate dismissal.

### Imposition of Sanction of Dismissal

The federal district courts of this nation possess the inherent power to regulate litigation and to sanction litigants for abusive practices. *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 126 (S.D.Fla.1987); *see also Aoude v. Mobil Oil Corporation*, 892 F.2d 1115, 1118 (1st Cir.1989) (District Court possesses the inherent power to deny court's processes to one "who defiles the judicial system by committing a fraud on the court"); *Sun World, Inc. v. Lizarazu Olivarria*, 144 F.R.D. 384, 389 (E.D.Cal.1992) (district court has inherent power to impose sanction of dismissal or default judgment). The power of any court to manage its own affairs, which necessarily includes the authority to impose reasonable and appropriate sanctions on the parties to litigation before it, is deeply rooted in the common law tradition. *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1545-6 6 (11th Cir.1993), *cert. den.*, ___ U.S. ___, 114 S.Ct. 181, 126 L.Ed.2d 140 (1993).[13]

Dismissal is appropriate where:
a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense.

19. Here, the Prosecution was ORDERED BY THIS COURT to share exculpatory evidence.

20. The evidence they had in their possession was not in the possession of the Defendant and the Defendant has yet to see the information.

21. Instead, the Defendant was told that the information was exculpatory and was shared with the prosecution and that it would be shared with him in turn.

22. That information was concealed by the Prosecution. That information was not shared.

7

23. That information was and is exculpatory and vital to the Defendant's defense.

24. That the concealment of that information from the Defendant is in contempt of this Court, and a violation of the due process and equal protection rights of the Defendant.

25. The People have concealed that information in order to obtain an advantage at trial.

26. I am informed, believe, and thereon allege that the People are in possession of videos, books and records which show the substance for which I am accused of possessing is in fact, a cure for many illnesses, and the information in their possession shows that the material would save others lives.

27. The concealment of that information they possess deprives me of the affirmative defense of defense of others.

28. The information they possess shows that the substances are not dangerous, and the pharmacy companies have suppressed patents to prevent this medical cure from being distributed, and that information would be and is a material affirmative defense.

29. That the Prosecutor, in addition to concealing material evidence, has continued to keep me incarcerated by different motions and means, depriving me of a speedy trial, and the most recent tactic is the use of a psychiatric evaluation without any cause or evidence that

30. Clearly, the Prosecutorial misconduct is exacerbated by the fact that they are intending to cause severe emotional distress by placing me in an institution with dangerous psychotic individuals and subjecting me to unnecessary medical treatment, drugs, and testing solely to delay my right to a speedy trial and to prevent me from having a fair trial.

8

31. Studies exist which are exculpatory and the Defendant has learned that the prosecution was provided that information from an amicus group who believes in the safety and effectiveness of the substances which the Defendant is being charged with possessing.

32. That information could have, and should have been shared since the People were ORDERED by this Court to share ALL exculpatory evidence.

33. The attached shows that the information was provided by CERTIFIED MAIL, RETURN RECEIPT to the People, and they did NOT share the same with the Defendant.

34. "The Hyde Amendment is "targeted at prosecutorial misconduct, not prosecutorial mistake." *Id.* at 1304. Therefore, to succeed in obtaining an award for fees and expenses under the Hyde Amendment, "[a] defendant must "show that the government's position underlying the prosecution amounts to prosecutorial misconduct." *Gilbert*, 198 F.3d at 1299." Here, we have a prosecutor who not only deprived the Defendant of a speedy trial, deprived him of bail, deprived him of bond, held him in custody for two years; but now has intentionally concealed from the Defendant exculpatory evidence and refused to justify the same.

35. Defendents speedy and public trial has been denied;
    Due process has been denied Defendent;

36. joseph timothy for defendent JOSEPH TIMOTHY GRENON has been denied Due Process;

37. As a result, the Defendant is entitled to an immediate dismissal of this action.

## CONCLUSION

This case has gone well beyond the  well within the 30-day limit set forth in the Speedy Trial Act, 18 U.S.C. § 3161(b) and the continued abuse of processes by the prosecutor by



concealing exculpatory evidence and seeking and obtaining an unnecessary psychiatric evaluation is sufficient for this Court to immediately dismiss this complaint and order the immediate release of the Defendant.

Respectfully submitted this 14th day of September, 2022.

Signed reserving all my rights, without prejudice, and demanding a speedy trial and release: joseph-timothy:grenon

BY: grenon, joseph-timothy, WITHOUT UNITED STATES – FOR NAMED DEFENDANT DBA JOSEPH TIMOTHY GRENON

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing was sent to the following people in the specified manner on the 14th day of September, 2022.

Prosecutor ___ Delivered or Certified Mail  7021 0950 0000 1985 9963

Michael Homer

John Shipley Jr. 99 NE 4th St, Miami, FL 33132

Clerk of the Court Delivered or certified mail   EI  068 609 055 US

Angela E. Noble

400 N. Miami Ave., Miami, FL 33128

Signed reserving all my rights, without prejudice, and demanding a speedy trial and release: *joseph-timothy:grenon*

BY: grenon, joseph-timothy, WITHOUT UNITED STATES – FOR NAMED DEFENDANT DBA JOSEPH TIMOTHY GRENON

Health and healing one step at a time SSM
a Private Member Association
980 Rogers Lake Road
Suite B
Kila Montana [59920]

Prosecuting attorneys
MICHAEL B. HOMER
Assistant United States Attorney
Court ID No. A5502497
99 Northeast 4th Street
Miami, Florida 33132-2111
and John Shipley Jr.
99 NE 4th st
Miami, Florida 33132

regarding case number 21-20242-CR-ALTONAGA

Greetings Prosecuting attorney Michael Homer and Prosecuting attorney John Shipley jr,

i believe you are attempting to prosecute individuals who believe in the validity of these studies and are concerned that the public health is at great risk because the big pharmaceutical companies are concealing how life-saving this product is. It clearly is a valid argument that the possession, distribution or use of this product is intended not to cause harm, but to save lives. You are aiding and abetting the concealment of a cure for many diseases.

men and women from our group have some information that we felt should be brought to your attention;

enclosed is an 80 page book called:

"The Universal Antidote/The Science and Story of Chlorine Dioxide"

and included is a study on "Alcide UDDERgold Platinum" 10 pages
By Health Products Regulatory Authority

Our men and women investigate cures that are being kept from mankind by Big Pharmacy;

Our goal is to bring about health and healing for mankind one step at a time;    august 17-2022

All Rights reserved, without prejudice
Sincerely, by: [signature]

joseph timothy grenon

10



Money-back Guarantee: If the mailer submits an item at a designated USPS® Priority Mail Express® acceptance location on or before the specified deposit time, the Postal Service will deliver or attempt delivery to the addressee or agent before the applicable delivery date and time. Mailer may request the addressee's signature from the addressee upon delivery of the item by checking the "signature required" box at the time of mailing. If the Postal Service does not deliver or attempt delivery by the specified time and the mailer files a valid claim for a refund, the Postal Service will refund the postage, unless an exception applies. See *Mailing Standards of the United States Postal Service, Domestic Mail Manual (DMM®) 604.9.5.5* which is available at *pe.usps.com*.

3. The Postal Service insures "non
   regulations) against loss, dama
   reconstruction, subject to additi
   catastrophic occurrence. Docur
   reasonable costs incurred in re
   Document reconstruction insur
   mailer should not attempt to pu
   document insurance is void.
4. The Postal Service insures "ne
   be converted to cash without fo
5. The Postal Service does not p
   or delay of Priority Mail Expres
   and articles improperly packag
   *Coverage, terms, and limitations*
   coverage, consult the DMM, whic

Indemnity Claims (Loss, Dama
may file an indemnity claim for lo
claim online at *usps.com*, or by
*Customer Reference Guide*. The
than 7 days but no later than 60
contents – immediately but no la
USPS retail receipt or eReceipt/
damage or missing contents, al
inspection when requested.

*Note:* The Postal Service does not offer money-back guarantee for military or DPO shipments delayed due to customs inspections or the item was destined for an APO/FPO/DPO that was closed on the intended day of delivery or the delay was caused by one of the situations in DMM 604.9.5.5. Consult USPS.com® or your local Post Office for information on delivery commitments and Priority Mail Express Military Service (PMEMS). For details, see DMM 703.2.0, which is available at *pe.usps.com*.

When a mailer submits a Priority Mail Express item requiring a signature and the Postal Service cannot deliver the item on the first attempt, the Postal Service leaves a notice for the addressee. If the addressee does not claim the item within 5 calendar days, the Postal Service returns the item to the sender at no additional charge.

Refund of Postage and Fees
(PME) item does not meet the s
customers may submit a refund
refund request either online at
be submitted no sooner than 2
Services fees refund requests
from the date of mailing. Each
Refund requests for PME or Ph

Insurance coverage: The Postal Service provides insurance only in accordance with postal regulations in the DMM, which is available at *pe.usps.com*. The DMM sets forth the specific types of losses that are covered, the limitations on coverage, terms of insurance, conditions of payment, and adjudication procedures. Certain items are not insurable. The DMM consists of federal regulations, and USPS personnel are not authorized to change or waive these regulations or grant exceptions. A mailer who requires information on Priority Mail Express insurance may contact the Postal Service before submitting an item. Limitations prescribed in the DMM provide, in part, that:

*Thank you for choosing Priorit*

Tracking: For USPS Tracking



1. Insurance coverage extends to the actual value of the contents at the time of mailing or the cost of repairs, not to exceed the insured limit for the item.
2. The Postal Service insures the contents of Priority Mail Express "merchandise" items (with "merchandise" defined by postal regulations) against loss, damage, or missing contents. The Postal Service includes coverage up to $100 per mailpiece at no additional charge. Additional merchandise insurance up to $5,000 per mailpiece may be available for purchase. Additional insurance for Priority Mail Express items is not available unless a signature is required.

LABEL 11-B MAY 2021   PSN 7690-02-000-9996

Dear Barb, Mark, Jordan, Jonathan, and Joseph,
in care of Barb

Health and Healing one step at a time SSM would like to inform you that the men and women her at this PMA are behind you and would like to send donations and support in any way possible;

we would like to thank you for helping us to fix thousands of men and women with your share of the Miracle Chlorine Dioxide;

we have sent all of this research USPS # EI 073 040 442 US to the Prosecuting attorneys in hopes that they can see the mistake that they are making with prosecuting men for trying to help save peoples lives;

We sent The book: The Universal Antidote/The Science and Story of Chlorine Dioxide
sent links to all of the videos for the PA   to watch
sent the study on Alcide uddergold platinum and it states "the safety of the product for humans and the environment is acceptable"

Blessings anthony

PRESS FIRMLY TO SEAL

PRESS

# PRIORITY MAIL EXPRESS®

## FLAT RATE ENVELOPE

ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup, scan the QR code.

USPS.COM/PICKUP

PS10001000006

EP13F May 2020
OD: 12 1/2 x 9 1/2

UNITED STATES POSTAL SERVICE®

PRIORITY MAIL EXPRESS®

CUSTOMER USE ONLY

FROM: (PLEASE PRINT) PHONE ( )

grenon
in care of:
7115 N. Division B-307
Spokane, washington
[99208]

DELIVERY OPTIONS (Customer Use Only)

☐ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

Delivery Options

☐ No Saturday Delivery (delivered next business day)

☐ Sunday/Holiday Delivery Required (additional fee, where available*)

*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT) PHONE ( )

grenon
In care of:
7115 N. Division B-307
Spokane, washington
[99208]

ZIP + 4® (U.S. ADDRESSES ONLY)

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.

■ $100.00 insurance included.

PEEL FROM THIS CORNER

PAYMENT BY A

USPS® Co

ORIGIN (POSTAL

☐ 1-Day

PO ZIP Code

Date Accepted (MM

Time Accepted

Special Handling/Fra

$

Weight

lbs.

DELIVERY (POS

Delivery Attempt (M

Delivery Attempt (M

LABEL 11-B, MAY 2



